David Campbell, Special Judge,
delivered the opinion of the majority of the Court.
The question is, as to the power of the Court to vacate a judgment, given on the last day of December Term, 1869, of this Court. Its solution depends upon what is the sound and correct construction of sections 4501, 4502 and 2878 of the Code. The intention of the Legislature is the thing which we must ascertain, and by which, when ascertained, the Court must be governed. To ascertain that intention, we must “take counsel of the past,” the “ then present and the future,” as these are the things by which the mind and judgment of wise and enlightened statesmen must be assumed, in the making of the law, to have been guided. The *155 garnered experience of generations of legal sages, upon the subject of the construction of statutes has been reduced into a system of rules for the guidance of the court which may be called upon in any particular instance to ascertain the intention of the maker of the law. Of these rules, the most important are these, that the court is to take into consideration the “ words, the context, the effects, and consequences — the reason, or spirit of the law, and the cause or necessity of the act.” Among these, the primary rules are that the intention of the legislator is to be collected from the words he has used, and that his words are to be taken in the ordinary and familiar signification and import, unless they be technical terms, or terms of art, when they are understood in their settled technical sense, or in their sense in such art.
Submit the sections of the Code under consideration to the test of these rules. They are as follows : “ In all cases in which the Supreme Court may give judgment through' inadvertence and oversight, when upon the face of the record, no cause of action existed against the. party, the Court may, upon its own motion, vacate such judgment,” 4501. “ The Court may likewise, at any time, after final judgment, correct mistakes, apparent on the face of the record, as -provided in section 2878,”. 4502. “Every mistake apparent on the face of the record may be corrected by the Court at any time after final judgment, at the discretion of the Court,” 2878. The last of these sections is one of the *156 sections in the chapters of the Code upon the subject of the “amendments; the other two sections are parts of the chapter in the Code upon the subject of the jurisdiction of the Supreme Court.” The first section of this chapter prescribe the number of the Judges of the Court, whose concurrence shall be necessary to every decision. The second declares that the Court has no original jurisdiction, but appeals and writs of error, or other proceedings for the correction of errors, lie from the inferior courts of law and equity, within each division, to the Supreme Court held for that division.” The third section provides that agreed cases may by consent of parties, be adjourned to the Supreme Court for trial. The fourth section confers upon the court power to commit or remand offenders. The fifth, to give judgment upon any and all bonds or recognizances, whether in civil or criminal cases, taken in the progress of the cause, in the Supreme or inferior Court, and to enforce the same by execution or otherwise; and the sixth, to issue process of scire facias in all such cases as is proper in similar cases in the inferior courts; and upon appearance of defendant and issue made, the right to order a jury to be summoned to try such issue. The seventh and eighth sections of this chapter are ss. 4501 and 4582, which have been above quoted. The ninth and last section of this chapter declares that the Court may issue all writs and process necessary for the exercise and enforcement of its jurisdiction. The jurisdiction of the Court is confined *157 to appeal or writs of error, or, other proceedings for the correction of errors only, and all the other powers conferred . upon it;¡'unless the provisions of sections 4501'and 4502, constitute an exception; are such process as are necessary to carry out and make effectual its power to entertain and try appeals or writs of error, or other proceedings for the correction of errors.
Are “mistake” and “error” synonyms? If they are, then any inferior court may, at any time, after final judgment is given in such court, vacate such judgment, if “ error ” has intervened in the giving of the judgment;, and if, it can, there is no need for either an appeal or a writ of error. The power conferred by this section is a- power to make amendments. From the time of the passage of the first .statute of amendments in England up to the time 'of the enactment of this section, the power conferred upon the courts from time to time, in England, and in Tennessee, to make amendments, has been understood and acted upon by the courts as a power, for .the correction of “mistakes.” The same has been the understanding and course of action of the courts, as to the common law power of courts, to make amendments. There is another of the common law remedies by which the signi-. fication of the term “mistake” is recognized, and made a foundation for remedial justice. If a court of law gave a judgment against an infant, a feme ‘covert, or a lunatic, upon the assumption of such person being under no. disability, the aggrieved *158 party was given Ms writ of error, eoram nolis, to vacate and annul such, improper judgment. It lay only to correct a mistake of fact. Tbe system of equitable procedure contains examples of remedies which, rests upon the same signification of the term mistake. Thus, if a decree be entered in Chancery, which, assuming the facts as found and stated in it to be correctly found and stated, is erroneous in point of law, such decree may be reviewed and reversed for error of law apparent upon its face; but if the decree be an improper one by reason of some fact or facts, which have been newly discovered, or which have come into existence in time after the original decree, the decree can only be set aside upon a bill of review, bringing forward and stating the new matter. Usage is the law by which the signification or import of words is fixed and settled, and the shades of difference in their meaning is marked and defined. Prom such usage for a long period iu statutes, and in the procedure of courts, the term mistake has come to mean a “ slip ” or a “ fault.” Thus, the expression is frequently used in our books that a demurrer reaches the first “fault” in pleading, or that a party has made a “ slip ” in some step in the suit. This long usage of the term “mistake,” has affixed to the word a different sense from the term “error,” of which it is not the synonym. The power to correct every mistake, at any time after final judgment, which is by sec. 2788, conferred upon any court, is not a power to reverse such judgment *159 for error of law therein. 'It is only the power to correct any “slip” or “fault” which may have been’ committed in the course of the suit, at any stage of such suit from its beginning to its end. The power, in' other words, to amend any such “fault” or “slip.” No authority, then, is to be found in this section for the action which the Court is now invoked to take. That action is not to correct any “slip” or “fault,” i. e., any mistake committed in the course 'of the suit from the beginning to the end, but to vacate a final judgment of this Court. • -
To know what the common law was, before the making of a statute whereby it may be seen whether the statute be introductory of a new law, or only affirmative of the common law, is the very lock and key to set open the windows of the statute. “Further; statutes are to be construed in reference to the principles of the common -law. For it is not to be presumed that the legislature intended to make any innovation upon the common law, further than the case absolutely required. The law rather infers that the act did not intend to make any alteration, other than what is specified, and besides what has been plainly pronounced, for if the Parliament had had that design, it is naturally said, they would have expressed it.” It was observed by the judge in the case of Stowel v. Zonch, that it was good for the expositors of a statute to approach- as .near as they could to the reason of the common law. The best- interpretation *160 of a statute, say other cases, is to construe it as near the rule and reason-of the common, law as may be, and by the course that law observes in other cases. Such indeed has been the language of the courts in every age, and when we consider the constant, vehement, and exalted' eulogy which the ancient sages bestowed upon the common law as “the perfection of reason/’ and “the best birthright and noblest inheritance of the subject,” we cannot be surprised at the great sanction given to this rule of construction, and its careful observance: Dwarris on Statutes (9 vol. Law Lib., p. 45.)
The act which this Court is, by sec. 4501, author-ised to do, is to vacate a final judgment given by itself. The state of things in which it is empowered so to do is “where the Supreme Court may give judgment through inadvertence and oversight, where, upon the face of the record, no cause of action existed against the party.” By the common law, when a Court had given judgment, and the term of the Court, at which the judgment was rendered, had passed, the Court had no power over it. The like rule prevailed in equity. "When a decree had. been made and enrolled, the Court had no power to alter or reverse it, except upon a bill of review for error of law, apparent ■ upon the face of the record, or for new matter. This section confers upon the Court power to vacate a final judgment, given by itself after the termination of the term at which it was rendered. This power is, however, not a general power over its judgments *161 at a subsequent' term. It is a special power only, and extends to the cases alone, “when, upon the face of the record no cause of action existed against tlie party, and when the judgment was given against him “through , inadvertence and oversight.” This grant of power is to be construed as near to the rule and reason pf the common law as may be, and is not to ,be presumed as intended to make any innovation upon the common law, further than the case absolutely required; t,o make any alterations other than what is specified, and besides what is “plainly pronounced.” The “cause” or “necessity” for the act, the provisions of which were afterwards carried forward into the Code, as sec. 4501, was that the Supreme Court, through inadvertence or oversight, had failed to observe a fact which showed tllat there was no cause of action against a party, and through such inadvertence and oversight had given judgment against him, “when, upon the face of the record no cause of • action existed against him;” and the mischief against which the act intended to provide was that the term of the Court having passed, there was no remedy of course, for the wrong done by the rules of the common law and by -previous statutes, and the remedy provided was to prevent a like wrong in other cases. The “slip” in that case was that a writ of sci fa against bail had not been returned to the first term after the default of his principal, and by this “slip” the plaintiff had lost any right of action against the bail, against whom, of course, no .cause of action upon the *162 record existed. The fact of the “slip” in the course of the suit was not, upon appeal in the ease to this Court, brought by counsel to the attention of the Court, and was not discovered by the Court, and through this inadvertence or oversight, judgment was given against the bail, against whom upon the face of the record no course of action “existed.” Now there is before our minds the “old law;,” the “mischief,” and the “remedy.” By the old law, the Court had, when it had given judgment, and the term had ended, no power over such judgment, the mischief was, that it had happened from the omission of counsel to dx-aw the Court’s attention to, and the Court’s failure to discover the fact of a “slip” or “fault” of a party in the course of an action in an inferior court, by which he was deprived of any cause of action against a defendant, and through such “inadvertence” and “oversight” the Court had given judgment, against defendant, when upon the face of the record no cause of action existed; and the remedy was to confer upon the Court, where like causes should occur in the future, to vacate the judgment upon its own motion. “Where a statute alters the common law, the meaning shall not be strained beyond the words, except in cases of public utility, when the end of the act appears to be larger than the enacting words.” Thei’e is in the enacting words of sec. 4501 nothing which indicates that the end of the statute was broader than the terms “inadvertence and oversight” express. In truth, these terms limit the jurisdiction of the *163 .Court to vacate judgments rendered at a previous term, wben there is upon tbe face of tbe record no cause of action against, a party, to tbe cases in which such judgments were given through inadvertence and oversight. The Court is a court of errors as to the judgments and decree of inferior courts of law and equity in this State. It is not a court of errors as to its own judgments of a previous term. The legislature evinces its knowledge and recognition of this fact by conferring upon it the power, not to reverse its judgments of a previous term of the designated description, and' given through inadvertence and; oversight, but- to vacate such judgments. “No statute shall be construed in such a manner as to be inconvenient and against reason.” The power of the Court to reverse its own judgments of a former term would indeed be most inconvenient. If such power existed, there could never be any, final judgment of this Court, for if the Court could at one term reverse its judgment of a previous term, upon the idea that such judgment, being erroneous in point of law, had been given through inadvertence and oversight, the same thing could be done ■ upon the same ground at each successive term of the Court. Certainly it is always a matter to be deplored, when a judgment of a court of- last resort has been erroneously given. As long,, however, as mere men shall be called upon to pass upon and decide upon the rights of others, as Judges, there will be occa,- ' sional instances in which judgments, which are *164 erroneous in point of law, will be given; for to err is human, and no court has ever been so learned, enlightened, and impartial as always to avoid the commission of error of law in some of its judgments. Already there has been one volume, at least, published of overruled eases, and if all the cases in England and America, which have been overruled in whole ' or in part, or modified or explained and limited, were collected, another volume would not be more than sufficient to contain their names.
From these views and considerations, it necessarily results that sec. 4501 confers upon this Court no power to reverse the judgment of last term, for error of law apparent upon its face, upon the idea that such judgment was rendered through inadvertence and oversight, when upon the face of the record no cause of action existed against the parties. In the broad sense of the terms, no cause of action, i. e., no right of recovery exists against any party, against whom a judgment, which is not in conformity to, and warranted by, the principles of law, is rendered. The judgment which is sought to be vacated, was given upon an agreed case, which is as follows: “In this case the parties agree upon the following statement of facts, upon which the controversy depends, and submit the same for trial and adjudication, to the Honorable Circuit Court of Franklin county, as if a suit had been brought by the plaintiff, and the facts herein admitted, fully proven. 1. It is agreed that on the *165 8tli clay of Marcli, 1861, defendants Colyar & Marks were attorneys and partners in the practice of law at "Winchester, Tennessee, anch that W. M. & J. D. Russell, partners in trade, on that day placed in the hands of defendants, as such attorneys, for collection, a bill of exchange for thirty-two hundred and fifty dollars; for which bill of exchange they executed a receipt, which is in the words and figures following: ‘Received, March 8th, 1861, of W. M. Russell and J. I). Russell, a bill of exchange for collection, drawn by II. II. Roberts, payable to A. M. Rutledge, and indorsed by him to H. S. Long, at ninety days, drawn 10th September, 1860, payable at Mobile; acceptance waived, but protested for non-payment, for thirty-two hundred and fifty dollars, which we will collect or account for — -Collected at three per cent. ColvaR & Makes.’
Indorsed to-wit, March 8, 1862: ‘I assign the within receipt to J. McKinney and L. Pointer, and also the judgment taken, for the consideration of thirty-two hundred and eighty-five dollars.
W. M. Russell.’
L. Pointer’s part, $2,106.80.
McKinney’s part, $1,142.40.
It is agreed that J. 13. Russell was dead at the time-of the assignment, and that the plaintiffs, Pointer and McKinney, were the owners of the claim or bill of exchange receipted for by defendants. It is agreed that the defendants, as attorneys, brought suit and obtained judgment in the Circuit Court of Franklin county against thiT^Jrarties to the bill *166 of exchange, at the-term of the Franklin Circuit Court, 1861, and that defendants Colyar & Marks, as suck attorneys, in 1868, received in payment of said judgment, Confederate Treasury notes, and receipted the judgment in the name of the plaintiffs. It is agreed that no communication or instruction in regard to said bill of exchange occurred after the execution of the receipt of the 8th of March, 1861, between plaintiffs and defendants, until 1865, when the plaintiffs, Pointer and McKinney, called upon defendants, and asked the compliance with the contract contained in the receipt aforesaid, demanding current money, which defendants refused to pay, or to collect or account for said bill of exchange, otherwise than as above shown. It is agreed that the costs shall abide the decision in this cause. It is agreed that this cause shall be considered as a suit instituted from the filing of this agreement with the Clerk of Warren Circuit Court. It is agreed that the defendants, upon receiving the Confederate Treasury notes, not having any knowledge of the assignment, addressed a letter to W. M. & J. D. Russell, informing them of the facts, and that they were absent in the army, and did not receive, or reply to, their communication. It is agreed that Confederate Treasury notes was the principal circulating currency at the time the defendants received them in satisfaction of the judgment. It is agreed that after the rendition of the judgment of the Cir cuit Court of Eranklin county, at the March Term 1861, in the case of W. M. & J. D. Russell v. Rob *167 erts, Rutledge and Long, for the sum of three-thousand four hundred and sixty-nine dollars and twenty-five cents, the defendants, or one or some of them, went to the law office of Colyar & Marks, attorneys for the plaintiff in the judgment, and paid to them in Confederate Treasury notes, the amount of said judgment, and took their receipt therefor. A true copy of the record in said cause, is filed as evidence in this suit.”
Upon an appeal from the judgment of the Franklin Circuit Court, this Court, at its last Term, gave judgment upon the agreed case, against Colyar & Marks. The opinion of a majority of the Court was given by Judge McClain, who diss'ented from the two other Judges — but who, according to a rule adopted by the then incumbents of the ‘bench, delivered the opinion of the Court. The majority of the Court, whose opinion was so written and delivered by Judge McClain, decided that “ Colyar & Marks were estopped by their receipt' from denying that they received the amount of the judgment in legal funds, having receipted the judgment in fulb;” and in conformity to this decision of a majority of the Court, judgment was rendered against Colyar & Marks. That this judgment was an erroneous one, is conceded on all hands. The question is, however, whether the same was rendered through inadvertence and oversight, when upon the face of the record, no cause of action existed against the defendants.
The fact that the payment of the judgment was made to Colyar & Marks in Confederate Treas *168 ury notes, was expressly stated upon the record in the agreed case, and the fact of the majority of the Court having placed their decision upon the ground that Colyar & Marks had received payment of the judgment, and receipted the same in full, es-topped them to deny that they had received payment in legal currency, shows that their attention was drawn to the fact of the payment having been received in Confederate Treasury notes, and the dissent of the other member of the Court, evinces that his attention was drawn to the same thing. There was, then, no oversight by the Court of, or inadvertence to, the existence of the fact that the payment had been made to, and received by Colyar & Marks in Confederate Treasury notes. 'With this fact in the minds of a majority of the Court, as well as in that of the dissenting member, the Court rendered judgment against the defendants, upon the -ground of estoppel. That this was an erroneous application of the doctrine of estoppel, to the state of facts in the record, may be true, but that the judgment founded upon such erroneous application of the doctrine of estoppel, was a judgment given by the Court through inadvertence and oversight, within the purview of sec. 4501 of the Code, cannot, as we think, be correctly held, unless, indeed, we were prepared to hold that every erroneous judgment is a judgment rendered through inadvertence and oversight. For all that, in this respect, is in the case, is, that the majority of the Court erred in the application of the doctrine of. *169 estoppel, to a known state of facts, to which it bad legally no application. The suggestion is made that the Court decided the case without being informed, or knowing of the existence of the decision of the Supreme Court of the Hnited States in the case of Thorington v. Smith, and therefore the judgment must be regarded as having been given through inadvertence and oversight of the true rule of law governing the case. Whenever the Court gives a judgment which is erroneous in point of law, such erroneous judgment is the result of oversight of some rule of law which governs the case, or of its inadvertence to the existence of some rule of law, or the application of it to the facts of the particular case. The further suggestion is made that as the judgment has not yet been collected by execution, such judgment is still within the power of the Court. The moment of the adjournment of the • last term of this Court its power over the judgment was at an end. The inclination of the Court is always, when it sees a wrong has been done, to redress such wrong, and in all cases in which this can be done without a disregard or violation of rule or principles of law, it will afford appropriate relief against the wrong. But a court must always be careful that its anxiety to give a remedy against a particular wrong, does not impel it to violate or disregard settled rules and principles of law. Much, therefore, as this Court may regret the wrong done to -the defendants, by the erroneous judgment of the last term of this Court *170 against them, it is constrained by the settled rules and. principles of law to let that erroneous judgment stand, and to deny their application to vacate it.